IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CORNICE & ROSE INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>FOUR KEYS, LLC, FIRST SECURITY BANK & TRUST COMPANY, MARCO TECHNOLOGIES, LLC, YOUNG CONSTRUCTION, LTD, PERRY NOVAK ELECTRIC, INC., KAMM EXCAVATING CORP., SUPERIOR LUMBER, INC., KURT HERBRECHTSMEYER, DEAN SNYDER CONSTRUCTION CO., MIKE GAGE PLUMBING & HEATING, INC., NORTHERN CEDAR SERVICE CO., INC., BRIAN YOUNG and WWA DESIGN, LLC, d/b/a Atura Architecture,<br><br>Defendants. | No. 20-CV-2097-LRR<br><br>**ORDER** |
| FIRST SECURITY BANK & TRUST COMPANY, FOUR KEYS, LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>CORNICE & ROSE INTERNATIONAL, LLC<br><br>Counter-Defendant. | |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
II. RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . .2
III. SUBJECT MATTER JURISDICTION. . . . . . . . . . . . . . . . . . .3
IV. RELEVANT FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . 4
V. ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    A. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . 6
    B. Parties' Arguments. . . . . . . . . . . . . . . . . . . . . . . . . .7
    C. Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . .9
        1. Copyright Infringement. . . . . . . . . . . . . . . . . . . . . 9
        2. Res Judicata. . . . . . . . . . . . . . . . . . . . . . . . . . .10
    D. Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
VI. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

## I. INTRODUCTION

The matters before the court are Defendant Four Keys, LLC's ("Four Keys"), First Security Bank & Trust Company's ("FSB") and Kurt Herbrechtmeyer's "Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint" ("Motion 1") (docket no. 62); Defendant Northern Cedar Service Co., Inc.'s ("NCS") "Motion to Dismiss Plaintiff's Amended Complaint" and Joinder in Motion 1 ("Motion 2") (docket no. 63); Defendant Mick Gage Plumbing & Heating, Inc.'s ("MGP&H") "Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint" ("Motion 3") (docket no. 64); Defendant Dean Snyder Construction Co.'s ("DSC") Joinder in Motion 1 and "Motion to Dismiss Count's I and II" ("Motion 4") (docket no. 66).

## II. RELEVANT PROCEDURAL HISTORY

On November 24, 2020, Plaintiff Cornice & Rose International, LLC ("C&R") filed a Complaint (docket no. 1). On January 11, 2021, Four Keys, FSB and Herbrechtmeyer filed a "Motion to Dismiss" C&R's Complaint (docket no. 22). On January 26, 2021, DSC filed a Joinder and Motion to Dismiss (docket no. 27). On

2

January 29, 2021, NCS filed a Motion to Dismiss and Joinder (docket no. 29). On the same date, Defendant Perry Novak Electric, Inc. filed a Joinder in the Motions to Dismiss (docket no. 30). Also, on January 29, 2021, MGP&H filed a Joinder and Motion to Dismiss (docket no. 31). On May 20, 2021, C&R filed a "Motion for Leave to Amend" (docket no. 47). On, July 16, 2021, Chief United States Magistrate Judge Kelly K.E. Mahoney entered an Order (docket no. 54) granting C&R's motion for leave to amend. On the same date, C&R's Amended Complaint (docket no. 55), alleging copyright infringement (architectural works) (Count I); seeking a declaratory judgment regarding the rights of the parties as to the McQuillen Place structure under the architectural works copyright (Count II); and alleging copyright infringement (technical drawings) (Count III), was filed. On July 19, 2021, the court denied the January 2021 motions to dismiss C&R's Complaint and joinders as moot. *See* July 19, 2021 Order (docket no. 58) at 2.

On July 30, 2021, Four Keys, FSB and Herbrechtmeyer filed Motion 1. On August 2, 2021, NCS filed Motion 2. On August 3, 2021, MGP&H filed Motion 3. On August 4, 2021, DSC filed Motion 4. On August 13, 2021, C&R filed the Resistance (docket no. 68) to Motion 1. On August 16, 2021, C&R filed the Resistance (docket no. 69) to Motion 2. On August 17, 2021, C&R filed the Resistance (docket no. 70) to Motion 3. On August 18, 2021, C&R filed the Resistance (docket no. 71) to Motion 4. On August 21, 2021, Four Keys, FSB and Herbrechtsmeyer filed a Reply (docket no. 72). On August 24, 2021, NCS filed a Reply (docket no. 73). The matter is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Kessler v. Nat'l Enter., Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003) (quoting *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998)). Even if the parties do not dispute the existence of subject-matter jurisdiction, a court may not preside over a case without it.

3

*See Crawford v. F. Hoffman La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction.").

Pursuant to 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights[.] . . ." *Id*. Here, C&R's claims arise under the Copyright Act, 17 U.S.C. § 101, *et seq*. "Jurisdiction of claims arising under the Copyright Act is proper in [federal district court] under 28 U.S.C. § 1338." *Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.*, 501 F.Supp. 299, 300 (D. Minn. 1980). Accordingly, the court has jurisdiction over C&R's claims.

### IV. RELEVANT FACTUAL BACKGROUND

Accepting all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of C&R, the relevant facts are as follows:

C&R is an architectural firm which was hired by McQuillen Place Company, LLC ("McQuillen") to design a building in Charles City, Iowa. Amended Complaint ¶ 18. C&R prepared technical drawings for the McQuillen building project. *Id.* ¶ 20. C&R applied for a copyright of the technical drawings. *Id.* ¶ 21. The copyright registration was approved. *Id.*

FSB was the primary lender to McQuillen and obtained a mortgage on the building McQuillen hired C&R to design. *Id.* ¶ 23. C&R designed the building, located at 123 North Main Street, Charles City, Iowa ("McQuillen Place"). *Id.* ¶ 24. "As the architect, [C&R] has intellectual property rights to the building based on the provision of 17 U.S.C. [§] 102(a)(8) and other provisions of Title 17, which provide for an architectural works copyright." *Id.* ¶ 25.

On April 25, 2019, McQuillen filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Iowa. *Id.* ¶ 28. On December 11, 2019, Charles L. Smith was appointed as Trustee. *Id.* On March 23, 2020, the Trustee moved to sell McQuillen Place "under § 363(b) and also sought to have the sale free and clear of liens which is authorized, under certain circumstances, by 11 U.S.C. § 363(f)." *Id.*

4

¶ 30. C&R "objected to the sale based on various grounds[,] including its intellectual property rights." *Id.* ¶ 31. In March 2020, the Trustee was advised that "McQuillen Place's license from [C&R] was revoked and could not be transferred." *Id.* ¶ 33. In April 2020, as the highest bidder, FSB purchased the McQuillen Place property. *Id.* ¶ 32. FSB "never obtained any agreement or license from [C&R] which would allow their use of the [C&R] intellectual property rights under 17 U.S.C. [§] 102(a)(8) and related provisions." *Id.* ¶ 29.

> On April 9, 2020, the Bankruptcy Court entered an Order, which stated that:
>
> Copyright: So long as the Purchaser, or its assignee, or its architect or agents do not use the Plans or Drawings or any work in which [C&R] holds a valid copyright (the C&R Intellectual Property), the Purchaser, or its assignee, may use and occupy the Property, free and clear of existing and future claims of C&R, whether for copyright infringement or otherwise. The Purchaser, or its assignee, or its architect or agents may not use the C&R Intellectual Property without first making arrangements satisfactory to C&R for the use of the C&R Intellectual Property. Nothing contained herein shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the C&R Intellectual Property by the Purchaser, or its assignee, or any third parties.

*Id.* ¶ 34 (quoting April 9, 2020 Order (bankruptcy docket no. 154 in bankruptcy case no. 19-507) at 12-13).

C&R alleges that "[e]ach Defendant has engaged in actions that infringe the architectural works copyright held by [C&R]. Amended Complaint ¶ 36. Specifically, C&R alleges that FSB "violated [C&R's] architectural works copyright by seeking to purchase and then assigning its interest in the building, over which [C&R] maintained architectural works copyright, to Four Keys[.]" *Id.* ¶ 37. C&R alleges that Four Keys "violated [C&R's] exclusive architectural works copyright by purchasing and taking possession of the building . . . in that, . . . it attempted through the purchase to obtain the right to use the physical manifestation of [C&R's] architectural works copyrighted design." *Id.* ¶ 38. Further, C&R alleges that Four Keys "violated [C&R's] exclusive

5

rights in [C&R's] protected design work product by inducing third parties . . . to . . . use [C&R's] protected design work product while engaging in construction activities which were themselves based on and derivative of [C&R's] protected design work product." *Id*. C&R alleges that Herbrechtsmeyer "violated [C&R's] architectural works copyright by overseeing and coordinating the actions of [FSB] and Four Keys . . . and by painting the exterior of the building over which [C&R] maintained architectural works copyright protections." *Id*. ¶ 39. Further, C&R alleges that "such actions necessarily violated [C&R's] exclusive rights in [C&R's] protected design work product by using [C&R's] protected design work product as a basis for engaging in construction activities which were themselves based on and derivative of [C&R's] protected design work product. *Id*. C&R alleges that DSC "violated [C&R's] architectural works copyright by working on the building over which [C&R] maintained architectural works copyright protections" and "by using [C&R's] protected design work product as a basis for engaging in construction activities which were themselves based on and derivative of [C&R's] protected design product." *Id*. ¶ 45. C&R alleges that MGP&H "violated [C&R's] architectural works copyright by working on the building over which [C&R] maintained architectural works copyright protections" and "by using [C&R's] protected design work product as a basis for engaging in construction activities which were themselves based on and derivative of [C&R's] protected design product." *Id*. ¶ 46. C&R alleges that NCS "violated [C&R's] copyright by working on or otherwise engaging in construction of the roof of the building over which over which [C&R] maintained architectural works copyright protections" and "by using [C&R's] protected design work product as a basis for engaging in construction activities which were themselves based on and derivative of [C&R's] protected design product." *Id*. ¶ 47.

## V. ANALYSIS

### A. Standard of Review

The Federal Rules of Civil Procedure provide for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When analyzing a Rule 12(b)(6) motion, the court must accept all factual allegations in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 838-39 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). This standard requires a complaint to "contain factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Parkhusrt v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

Although a plaintiff need not provide "detailed" facts in support of his or her allegations, the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

### B. Parties' Arguments

All Defendants in this matter who filed motions to dismiss essentially argue that: (1) Count I of C&R's Amended Complaint should be dismissed because it fails to plead any facts that any Defendant infringed on C&R's architectural works copyright; (2) the Copyright Act permits and authorizes the alleged conduct of Defendants; (3) C&R's claims are precluded based on the bankruptcy court's April 9, 2020 Order approving the

7

Case 6:20-cv-02097-LRR-KEM   Document 85   Filed 09/20/21   Page 7 of 16

sale, use, occupation, development and completion of McQuillen Place free and clear of any claims of copyright infringement by C&R; and (4) Count II of C&R's Amended Complaint should be dismissed because it fails to state a claim for declaratory relief because C&R's request for relief is nothing more than a copyright infringement claim, which fails as a matter of law, C&R's requested declaratory relief is inconsistent with federal law and C&R seeks clarification of an unambiguous bankruptcy court order.

In resistance to the motions to dismiss, C&R essentially argues that: (1) the issues raised by the Defendants are moot; (2) Defendants misunderstand the scope and nature of protection provided by an architectural works copyright; (3) the April 2020 bankruptcy court order approving the sale of the McQuillen Place property and subsequent dismissal of the appeal is not preclusive; and (4) the rights of the parties under the April 2020 bankruptcy order need to be determined and declared.

At the outset, before addressing the substantive issues raised in the Defendants' motions to dismiss, the court finds that C&R's initial argument in resistance—that the issues raised by Defendants are moot—is wrong. The court dismissed all of the Defendants' previous motions to dismiss because C&R filed an Amended Complaint. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect."). Furthermore, Defendants are not prohibited from filing motions to dismiss the amended complaint. *See Cartier v. Wells Fargo Bank, N.A.*, 547 Fed. App'x 800, 803 (8th Cir. 2013) (per curiam) ("After the amended complaint was filed, there was no longer an original complaint to consider" and "[a]s a result, Appellees could properly, and without prior permission, file a motion to dismiss the amended complaint."). Accordingly, the court will consider and address the issues raised in Defendants' motions to dismiss C&R's Amended Complaint.

8

### C. *Applicable Law*

#### 1. *Copyright Infringement*

17 U.S.C. § 102(a)(8) provides copyright protection for architectural works. *See id*. 17 U.S.C. § 101 defines "architectural works" as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id.* "Thus, copyright protection for an architectural work may encompass both architectural plans and constructed buildings." *Javelin Investments v. McGinnis*, No. H-05-3379, 2007 WL 781190, at *3 (S.D. Texas Jan. 23, 2007) (citing *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 109-110 (1st Cir. 2006)). However, the scope of protection afforded to architectural works is limited, as provided in 17 U.S.C. § 120(b):

> (b) Alteration to and destruction of buildings—Notwithstanding the provisions of section 106(2), the owners of a building embodying an architectural work may, without the consent of the author or copyright owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building.

*Id*. In *Javelin Investments, LLC*, the district noted that "there is a dearth of case law interpreting § 120(b)," but "the legislative history explains that the provision is meant to prevent a copyright owner, who holds exclusive right to prepare derivative works, from interfering with alterations to habitable architectural works." 2007 WL 781190, at *6.

In order to establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Warner Bros. Entertainment, Inc. v. X One X Productions*, 644 F.3d 584, 595 (8th Cir. 2011) ("The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work.").

9

### *2. Res Judicata*

"There are two types of preclusion—claim preclusion, or res judicata, and issue preclusion, or collateral estoppel." *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 912 F.3d 445, 452 (8th Cir. 2018). "Claim preclusion 'provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."'" *Id.* (quoting *Klipsch, Inc. v. WWR Tech, Inc.*, 127 F.3d 729, 733 (8th Cir. 1997), in turn quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "Collateral estoppel generally provides that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim." *B&B Hardware, Inc.*, 912 F.3d at 452 (quotation and alteration omitted). In the Eighth Circuit, collateral estoppel has five elements: "(1) the party sought to be precluded in the second suit was a party . . . in the prior suit; (2) the issue sought to be precluded is the same as the issue involved in the prior action; (3) the issue was actually litigated in the prior action; (4) the issue was determined by a valid and final judgment; and (5) the determination in the prior action was essential to the judgment." *Id.* (quoting *Morse v. Commissioner of Internal Revenue Service*, 419 F.3d 829, 834 (8th Cir. 2005)).

### D. *Application*

Here, FSB purchased McQuillen Place before it was completed and assigned its interest in the property to Four Keys. Amended Complaint ¶ 37. C&R alleges that Four Keys "induc[ed] third parties" to engage in "construction activities" on McQuillen Place in violation of C&R's architectural works copyright. *Id.* ¶ 38. For example, C&R alleges that Herbrechtsmeyer was hired to oversee and coordinate the "construction activities" necessary to complete McQuillen Place. *Id.* ¶ 39. C&R claims that these actions by FSB, Four Keys and Herbrechtsmeyer constitute copyright infringement. *See id.* ¶¶ 37-39. C&R also alleges that DSC, MGP&H and NSC, all contractors hired to perform work necessary for completing McQuillen Place, also violated C&R's

10

architectural works copyright by working on the building and engaging in "construction activities" on McQuillen Place. *Id.* ¶¶ 45-47. C&R does not allege against any Defendant, even the Defendants that did not file a motion to dismiss, that any Defendant copied C&R's protected architectural works copyright in any manner. *See Warner Bros. Entertainment, Inc.*, 644 F.3d at 595 (providing that a required element of copyright infringement is "copying of original elements of the copyrighted work"). Thus, C&R has failed to state a claim of copyright infringement against any Defendant; and, therefore, Count I of C&R's Amended Complaint will be dismissed.

Indeed, the sale of a building protected by an architectural works copyright does not create a second copy of the building. *See Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007) ("A sale of the house would not be a second copy or manifestation of the design, but merely a transfer of the structure in which the design was first copied.").

Furthermore, pursuant to 17 U.S.C. § 120(b), the owner of a building may authorize the alteration of building with an architectural works copyright "without the consent of the author or copyright owner of the architectural work." *Id.* In *Javelin Investments, LLC*, a case that is similar to the situation here, homeowners building a new home severed their relationship with the original builder and architect and hired a new architect and builder to complete their home. 2007 WL 781190, at *1-*2. The original architect and builder sued the homeowners, for among other things, copyright infringement. *Id.* In determining that the original architect and builder did not have a copyright infringement claim, the district court addressed the express limitations on an architectural works copyright provided by 17 U.S.C. § 120(b):

> Section 120(b) does not expressly contain any limitation upon the manner or means by which a homeowner may exercise his [or her] right to alter the structure. Presumably, no such limitations were intended by Congress, else they would be expressed in § 120(b). Significantly, the original draft of the AWCPA permitted only "minor" or "necessary" changes by the building owner absent the architect's consent. . . . [However, t]he unrestricted alteration right was inserted at the urging of the American Institute of

11

Architects. One influential architect, Michael Graves, argued persuasively that retention of an architect's "veto" over building alterations would not in practice benefit the architect, because building owners would then demand assignment of all copyright interests up front as a standard condition of any engagement. . . . Given this history, the failure to specify permissible methods of alteration is unremarkable, and supports no inference of an implied restriction. . . .

[Plaintiff's] implied limitation upon § 120(b) alteration rights also defies common sense. [Plaintiff] argues that the [defendants] had three alternatives if they wished to finish their house: (1) getting [plaintiff's] permission to use [plaintiff's] plans; (2) finishing construction without using any plans; or (3) substantially altering the existing structure so that it was not "substantially similar" to [plaintiff's] plans. These supposed alternatives illustrate perfectly the predicament building owners would face in the absence of § 120(b). Option 1 would give the architect a "veto" over subsequent adaptation and even repair of inhabitable buildings, a result not only impractical but also inimical to the best interest of architects in the long run. Option 2 is a recipe for professional malpractice and structural failure. No professional architect or builder would commence a substantial renovation project without drawings or plans reflecting the existing structure. . . . It would serve little purpose for Congress to expressly grant homeowners the right to make whatever changes they wish to their homes, while silently denying them the practical means to exercise that very right. Option 3 merely encourages economic waste, forcing the owner to destroy work product which he has already bought and paid for. These "alternatives" to § 120(b) sharply illustrate the practical wisdom of Congress in bestowing upon building owners a limited statutory license to modify their own buildings. . . .

[Plaintiff's] argument that § 120(b) does not give the [defendants] the right to copy [plaintiff's] plans for the limited purpose of finishing the house is untenable as a matter of law. It is undoubtedly true that a homeowner could not copy the architectural plans in order to build another home on another site. The statute itself plainly precludes that possibility. 17 U.S.C. § 120(b) ("owners of a building which embodies a copyrighted architectural work may . . . make or authorize the making of alterations *to such building* . . ."). But it seems equally clear that § 120(b) places no limits upon the means by which building owners may alter their buildings without fear of infringement. Whether the alteration is accomplished by measuring the

12

> existing structure or by copying the original plans for the existing structure is simply immaterial.

2007 WL 781190, at *6-*8 (emphasis in original). Here, FSB, the owner of McQuillen Place and Four Keys, who was assigned FSB's interest in the building by FSB, hired Herbrechtsmeyer, DSC, MGP&H, NSC and all of the other Defendants in this case to complete McQuillen Place. Pursuant to ¶ 120(b), C&R's architectural works copyright "places no limits upon the means by which building owners may alter their buildings without fear of infringement," which, here, includes hiring contractors to complete the building. *Javelin Investments, LLC*, 2007 WL 781190, at *8. Like in *Javelin Investments, LLC*, FSB and Four Keys did not infringe C&R's copyright by hiring all the other Defendants to complete McQuillen Place. Further, Four Keys cannot have induced the other Defendants to infringe C&R's copyright because, as discussed above, there is no copyright infringement in this case. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement). Because C&R does not allege that any Defendant built an identical or substantially similar building to McQuillen place there can be no copyright infringement claim. Indeed, C&R has not alleged that any Defendant copied any original elements of McQuillen Place. *See Warner Bros. Entertainment, Inc.*, 644 F.3d at 595. Accordingly, C&R has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Moreover, Count I of C&R's Amended Complaint is barred by the doctrine of res judicata. On April 9, 2020, the bankruptcy court entered an Order (bankruptcy docket no. 154 in bankruptcy case no. 19-507) addressing C&R's architectural works copyright. Specifically, the bankruptcy court stated that "the Purchaser, or its assignee, may use and occupy [McQuillen Place], free and clear of existing and future claims of C&R, whether for copyright infringement or otherwise." April 9, 2020 bankruptcy court Order at 12; *see also* Amended Complaint ¶ 34. Because all of the elements of res judicata are met, the bankruptcy court's April 9, 2020 Order controls on the issue of copyright

infringement for McQuillen Place itself, as there is no claim that any Defendant copied McQuillen Place by building a second identical or substantially similar building, and bars Count I of C&R's Amended Complaint. First, C&R was involved in the proceedings before the bankruptcy court. *See* Amended Complaint ¶¶ 31, 35. Second, the copyright issue C&R is attempting to relitigate is identical to the issue decided by the bankruptcy court, that is, the terms of the sale of McQuillen Place and FSB's and Four Keys' ability to complete McQuillen Place "free and clear of existing and future claims of C&R," including copyright infringement. Third, the issue was fully litigated. C&R filed objections to the sale of McQuillen Place and multiple motions challenging the April 9, 2020 bankruptcy court Order. *See* Amended Complaint ¶¶ 31, 35. C&R also unsuccessfully appealed the order. *See* December 22, 2020 Entry ID: 4987418 in Eighth Circuit Court of Appeals case 20-3242 (order dismissing C&R's appeal). Fourth, the bankruptcy court's order is final, as C&R's appeal has concluded. Fifth, the terms of the sale of McQuillen Place were essential to the April 9, 2020 bankruptcy court Order, as it allowed FSB and Four Keys to complete McQuillen Place "free and clear of existing and future claims of C&R," including copyright infringement. To the extent, C&R complains that any of the Defendants in this case used their copyrighted plans or drawings to complete McQuillen Place, there are no such allegations in the Amended Complaint. Moreover, the April 9, 2020 bankruptcy court's Order prohibits the Defendants from using the plans or drawings for building/copying a second building which is identical or substantially similar to McQuillen Place. C&R has not alleged such an occurrence and any use of the drawings or plans by the owner of McQuillen Place, FSB and Four Keys, to complete McQuillen Place is not a copyright infringement under 17 U.S.C. § 120(b). *See Javelin Investments, LLC*, 2007 WL 781190, at *6-*8.

Finally, Count II of C&R's Amended Complaint must also be dismissed, as it generally seeks declarations as to the scope of C&R's architectural works copyright in McQuillen Place and the extent to which FSB and Four Keys can use the property, which have already been addressed in the court's discussion of 17 U.S.C. § 120(b) and res

14

judicata. *See generally* Amended Complaint ¶¶ 58-74. As FSB and Four Keys point out in their Brief (docket no. 62-1), "C&R requests nothing more than a holding of copyright infringement." FSB's and Four Keys' Brief at 20. Specifically, FSB and Four Keys point out that, "[f]or each and every requested declaration, the analysis is the same as for determining copyright infringement." *Id*. Indeed, whether Defendants copied McQuillen Place will determine the scope of C&R's architectural works copyright in McQuillen Place, FSB's and Four Keys' right to use McQuillen Place and whether any permission from C&R is necessary for FSB and Four Keys to use McQuillen Place. As discussed above, C&R has failed to allege a claim for copyright infringement against any of the Defendants, as C&R has not alleged that any Defendant copied McQuillen Place. Furthermore, pursuant 17 U.S.C. § 120(b), FSB and Four Keys, as owners of McQuillen Place, were not limited by C&R's architectural works copyright to hire contractors and finish the building. Moreover, the bankruptcy court's controlling April 9, 2020 Order allowed FSB and Four Keys to complete McQuillen Place "free and clear of existing and future claims of C&R," including copyright infringement. Accordingly, Count II of C&R's Amended Complaint fails "to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and is dismissed as to all Defendants.

## *VI. CONCLUSION*

In light of the foregoing, the Motions to Dismiss (docket nos. 62, 63, 64 & 66) are **GRANTED**. Counts I and II of C&R's Amended Complaint are **DISMISSED** as to all Defendants in this case. Count III, Copyright Infringement (Technical Drawings), **REMAINS** against Defendants Dean Snyder Construction Co., Kurt Herbrechtsmeyer, Four Keys, LLC, First Security Bank & Trust Company and WWA Design, LLC d/b/a Atura Architecture.

**IT IS SO ORDERED**.

15

**DATED** this 20th day of September, 2021.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

16