**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| CORNICE & ROSE INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>FOUR KEYS, LLC, FIRST SECURITY BANK & TRUST COMPANY, KURT HERBRECHTSMEYER, DEAN SNYDER CONSTRUCTION CO. and WWA DESIGN, LLC, d/b/a Atura Architecture,<br><br>Defendants.<br><hr>FIRST SECURITY BANK & TRUST COMPANY, FOUR KEYS, LLC,<br><br>Counter-Claimants,<br><br>vs.<br><br>CORNICE & ROSE INTERNATIONAL, LLC<br><br>Counter-Defendant. | No. 20-CV-2097-LRR<br><br>**ORDER** |

_____

*TABLE OF CONTENTS*

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II.  RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . .2

III. SUBJECT MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . .3

IV.  SUMMARY JUDGMENT STANDARD. . . . . . . . . . . . . . . . . . . . . . . .3

*V.     RELEVANT FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . 5*
*VI.    ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8*
     *A.    Parties' Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8*
     *B.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9*
     *C.    Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10*
*VII.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16*

## *I. INTRODUCTION*

The matter before the court is Defendants Four Keys, LLC's ("Four Keys"), First Security Bank & Trust Company's ("FSB") and Kurt Herbrechtmeyer's (collectively, "Defendants") Motion for Summary Judgment ("Motion") (docket no. 104).

## *II. RELEVANT PROCEDURAL HISTORY*

On July 16, 2021, after receiving permission from the court, Plaintiff Cornice & Rose International, LLC ("C&R") filed an Amended Complaint (docket no. 55), alleging copyright infringement (architectural works) (Count I); seeking a declaratory judgment regarding the rights of the parties as to the McQuillen Place structure under the architectural works copyright (Count II); and alleging copyright infringement (technical drawings) (Count III). After being fully briefed by the parties, on September 20, 2021, the court dismissed Counts I and II of the Amended Complaint as to all Defendants, leaving only Count III against Defendants Four Keys, FSB, Kurt Herbrechtsmeyer, Dean Snyder Construction Co. ("DSC") and WWA Design, LLC ("WWA"). *See* September 20, 2021 Order (docket no. 85) at 15.

On February 1, 2022, Defendants filed the Motion. On February 11, 2022, DSC and WWA filed a Joinder in Defendants' Motion for Summary Judgment (docket no. 106). On March 1, 2022, after being granted an extension of time, C&R filed the Resistance (docket no. 111). On March 15, 2022, after being granted an extension of

time, Defendants filed a Reply Brief (docket no. 138).[1] The matter is fully submitted and ready for decision.

### III.  SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited jurisdiction.  The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Kessler v. Nat'l Enter., Inc.*, 347 F.3d 1076, 1081 (8th Cir. 2003) (quoting *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998)).  Even if the parties do not dispute the existence of subject-matter jurisdiction, a court may not preside over a case without it. *See Crawford v. F. Hoffman La Roche Ltd.*, 267 F.3d 760, 764 (8th Cir. 2001) ("It is axiomatic that a court may not proceed at all in a case unless it has jurisdiction.").

Pursuant to 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights[.] . . ." *Id*.  Here, C&R's claim arises under the Copyright Act, 17 U.S.C. § 101, *et seq*.  Accordingly, the court has jurisdiction over C&R's claim.

### IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).  "A dispute is genuine if the evidence is such that it could cause a reasonable

---

[1] Initially, Defendants filed their Reply Brief on March 14, 2022, along with a motion seeking leave to file an overlength reply brief. *See* docket no. 136.  On March 15, 2022, the motion was granted, and the Reply Brief was docketed.  On March 14, 2022, presumably in anticipation of the Reply Brief being docketed, DSC and WWA filed a Joinder in Defendants' Reply Brief, which included additional argument in response to C&R's Resistance. *See* docket no. 134.

3

jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 (8th Cir. 2016) (quoting *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . .'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (third alteration in original) (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010). "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cty.*, 447 F.3d 569,

578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. RELEVANT FACTUAL BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to C&R. *See Munz v. Michael*, 28 F.3d 795, 796 (8th Cir. 1994).

C&R is an architectural firm which was hired by McQuillen Place Company, LLC ("McQuillen") to design a building in Charles City, Iowa. Amended Complaint ¶ 18. C&R prepared technical drawings for the McQuillen building project (the "Building"). *Id*. ¶ 20. C&R applied for a copyright of the technical drawings. *Id*. ¶ 21. The copyright registration was approved. *Id*.

In 2017, "McQuillen [Place Company,] LLC, through its representative Charles Thomson or through the architect [C&R], provided DSC with plan details, project details, contracts, and drawings regarding the Building . . . with the understanding that DSC would use the Original Building Plans for estimating and construction services for McQuillen [Place Company,] LLC." Defendants' Statement of Undisputed Material Facts ("SUMF") (docket no. 104-2) ¶ 2. On August 4, 2017, McQuillen and DSC entered into a contract "to provide certain estimating and construction services for the Building." *Id*. ¶ 3. On September 15, 2017, after several walk-throughs of the Building, DSC prepared a detailed list of items necessary to complete construction of the Building. *Id*. ¶ 4. DSC's estimated budget to complete the Building was $2,700,000 to $3,000,000. *Id*. ¶ 5. "Any use of the Original Building Plans in the preparation of the estimated budget for 2017 was with the express or implied permission of" McQuillen, Charles Thomson or C&R. *Id*. ¶ 6. "After DSC submitted the estimated budget in 2017, further construction work was not authorized by McQuillen [Place Company,] LLC, and DSC did not work on the Building for . . . McQuillen [Place Company,] LLC." *Id*. ¶ 7.

On April 25, 2019, McQuillen filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Iowa. Amended Complaint ¶ 28. On December 11, 2019, Charles L. Smith was appointed as Trustee. *Id*. On March 23,

5

2020, the Trustee moved to sell the Building "under § 363(b) and also sought to have the sale free and clear of liens which is authorized, under certain circumstances, by 11 U.S.C. § 363(f)." *Id*. ¶ 30. In April 2020, the Building was sold to Four Keys. SUMF ¶ 8. On April 9, 2020, as part of the sale of the Building, the Bankruptcy Court entered an Order, which stated that:

> Copyright: So long as the Purchaser, or its assignee, or its architect or agents do not use the Plans or Drawings or any work in which [C&R] holds a valid copyright (the C&R Intellectual Property), the Purchaser, or its assignee, may use and occupy the Property, free and clear of existing and future claims of C&R, whether for copyright infringement or otherwise. The Purchaser, or its assignee, or its architect or agents may not use the C&R Intellectual Property without first making arrangements satisfactory to C&R for the use of the C&R Intellectual Property. Nothing contained herein shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the C&R Intellectual Property by the Purchaser, or its assignee, or any third parties.

Amended Complaint ¶ 34 (quoting April 9, 2020 Order (bankruptcy docket no. 154 in bankruptcy case no. 19-507) at 12-13); C&R's Statement of Additional Facts ("SAF") (docket no. 111-2) ¶ 2.

In September 2020, DSC visited the Building several times to provide Four Keys with a proposal for scope of work necessary to finish the second and third floors and access areas of the Building. SUMF ¶ 9.[2] Specifically, the "scope of work was prepared

---

[2] In its response to Defendants' SUMF, C&R denies ¶ 9, stating "DSC's November 24, 2020 designs were clearly the result of copying C&R's copyrighted designs." Response to Statement of Facts (docket no. 111-2) at 3, ¶ 9. Local Rule 56(b)(4) provides that: "A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *Id*. C&R's stated reason for denying SUMF ¶ 9 does not

6

by walking through the existing building, room by room, and detailing work that needed to be completed." *Id*. On November 9, 2020, DSC and Four Keys entered into a construction contract for the build out of the second and third floors and access areas of the Building. *Id*. ¶ 11. Later, during the week of November 9, 2020, DSC sent an employee, Matt Price, to the Building site to "physically perform field measurements using a laser scanning device to measure the existing structure and the interior spaces of the Building." *Id*. ¶ 14.[3] DSC's measurements were provided to WWA, which used the measurements to generate plans of the existing Building. *Id*. ¶ 15.[4] The plans generated by WWA were used "exclusively . . . to finish the Building or to alter the Building in ways authorized under the contract with the Building owner, Four Keys and have not

---

address the content of SUMF ¶ 9, DSC's visits to the Building for purposes of providing Four Keys with a proposal for scope of work necessary to finish the Building. C&R also fails to respond to SUMF ¶ 9 "with appropriate appendix citations," as C&R provides no appendix citations. Accordingly, the court deems SUMF ¶ 9 admitted. *See* LR 56(b)(4); *see also* Federal Rule of Civil Procedure 56(e)(2).

[3] C&R's stated reason for denying SUMF ¶ 14, again, does not address the content of SUMF ¶ 14. That is, C&R's denial does not address DSC's sending of an individual to the Building to perform field measurements of the interior spaces of the Building. C&R also fails to respond to SUMF ¶ 14 with appropriate appendix citations. Accordingly, the court deems SUMF ¶ 14 admitted. *See* LR 56(b)(4); *see also* Federal Rule of Civil Procedure 56(e)(2); Footnote 2 of this Order.

[4] C&R's stated reason for denying SUMF ¶ 15 does not address the content of SUMF ¶ 15, as C&R does not address DSC giving the measurements to WWA for purposes of generating plans based on the measurements. C&R also fails to respond to SUMF ¶ 15 with appropriate appendix citations. Accordingly, the court deems SUMF ¶ 15 admitted. *See* LR 56(b)(4); *see also* Federal Rule of Civil Procedure 56(e)(2); Footnote 2 of this Order.

Additionally, while not discussed in either parties' statement of facts, it should be noted that after generating the November 24, 2020 plans, WWA generated a corrected set of plans on December 29, 2020, which C&R does not claim resulted from a copyright infringement.

been utilized with any other project." *Id.* ¶ 21; *see also* Defendants' Appendix (docket no. 104-3) at 5, ¶ 22 (Affidavit of Randy Kibsgaard, Senior Project Manager for DSC).[5]

## VI. ANALYSIS

### A. Parties' Arguments

Defendants argue that "it is undisputed that neither DSC nor [WWA] copied the Original Building Plans as part of measuring the Building and generating the [WWA] Generated Plans." Defendants' Brief in Support of Motion for Summary Judgment ("Defendants' Brief") (docket no. 104-1) at 8. Defendants maintain that there "are no material facts that DSC or [WWA] ever copied the Original Building Drawings when they generated the [WWA] Generated Plans," and, therefore, "there is no direct infringement." *Id.* Defendants also argue that "no direct infringement means no vicarious infringement." *Id.* at 8; *see generally id.* at 8-9. In the alternative, Defendants assert that, "even if there had been infringing activity on the part of DSC, Four Keys did not have the right or ability to supervise that activity." *Id.* at 10. Defendants also argue that Four Keys had "no obvious or direct financial interest in the exploitation of the copyright in the Original Building Plans," and, therefore, C&R cannot meet the second element required for finding vicarious liability against Defendants. *Id.* at 10-11. Additionally, Defendants argue that "DSC and [WWA], through Four Keys' ownership of the building, are protected by 17 U.S.C. § 120(b), and Count III fails as a matter of law." *Id.* at 11. Defendants maintain that "Four Keys, as the Building owner, is fully within its rights under Section 120(b) to complete construction on its Building by having its contractors and agent, measure the existing structure and generating plans from those

---

[5] C&R denies SUMF ¶ 21, stating "[d]eny to the extent that the statement is asserting that the November 24, 2020 designs were not a product of copying C&R's copyrighted designs." Response to Statement of Facts at 5, ¶ 21. Again, C&R's denial does not address the fact that WWA's generated plans were created and used for the purpose of finishing the Building. C&R also fails to respond to SUMF ¶ 21 with appropriate appendix citations. Accordingly, the court deems SUMF ¶ 21 admitted. *See* LR 56(b)(4); *see also* Federal Rule of Civil Procedure 56(e)(2); Footnote 2 of this Order.

8

measurements." *Id*. at 12. Finally, Defendants argue that C&R's claim is precluded. *See generally id*. at 13-15.

In resistance to the motion for summary judgment, C&R argues that "there are genuine issues of material facts, because [C&R] can demonstrate that . . . [DSC] and [WWA] . . . engaged in the direct copying of C&R's architectural designs, and did not create plans solely by measuring the structure." Memorandum of Authorities in Support of Resistance to Motion for Summary Judgment ("C&R's Brief") (docket no. 111-1) at 3. C&R maintains that, "if structures are found in DSC and [WWA's] plans that mirror structures found in C&R's plans that were never built (and thus do not 'exist' and cannot be said to come about because of merely measuring existing structures), then DSC and [WWA's] plans infringe on C&R's plans." *Id*. C&R also argues that, as has already been held in Chief Magistrate Judge Kelly K.E. Mahoney's July 16, 2021 Order (docket no. 54) granting C&R's Motion to Amend Complaint (docket no. 47), C&R's claim is not precluded. *See generally* C&R's Brief at 5-6. Finally, relying on *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 514 (4th Cir. 2002), C&R argues that Defendants can be held vicariously liable for DSC's and WWA's copyright infringement. *See generally* C&R's Brief at 6-8.

### *B. Applicable Law*

17 U.S.C. § 102(a)(8) provides copyright protection for architectural works. *See id*. 17 U.S.C. § 101 defines "architectural works" as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id*. However, the scope of protection afforded to architectural works is limited, as provided in 17 U.S.C. § 120(b):

> (b) Alteration to and destruction of buildings—Notwithstanding the provisions of section 106(2), the owners of a building embodying an architectural work may, without the consent of the author or copyright

9

> owner of the architectural work, make or authorize the making of alterations to such building, and destroy or authorize the destruction of such building.

*Id*. Neither the court nor the parties have found Eighth Circuit case law interpreting this statute. In *Javelin Investments, LLC, v. McGinnis*, No. H-05-3379, 2007 WL 781190 (S.D. Texas), the district court noted that "there is a dearth of case law interpreting § 120(b)," but "the legislative history explains that the provision is meant to prevent a copyright owner, who holds exclusive right to prepare derivative works, from interfering with alterations to habitable architectural works." *Id*. at *6.

In order to establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Warner Bros. Entertainment, Inc. v. X One X Productions*, 644 F.3d 584, 595 (8th Cir. 2011) ("The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work."). If there is no direct evidence of copying, a plaintiff must show that (1) Defendants had access to the copyrighted work; and (2) the infringing material is substantially similar to the copyrighted work. *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 964 (8th Cir. 2005). A two-step analysis is used for determining substantial similarity, requiring substantial similarity of both ideas and of expression. *See Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). "Similarity of ideas is evaluated extrinsically, focusing on objective similarities in the details of the works." *Id*. If the ideas are substantially similar, then 'similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.'" *Id*. (quoting *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987)).

### *C. Application*

At the outset, the court addresses Defendants' assertion that C&R's copyright infringement claim is precluded and finds such assertion lacks merit. In the course of the

present litigation, Defendants have already raised and lost on the issue of claim preclusion. Specifically, in their Resistance (docket no. 49) to C&R's Motion to Amend (docket no. 45), Defendants raised the issue of claim preclusion. *See generally* docket no. 49 at 8-10. In the order granting C&R leave to amend its complaint, Chief Magistrate Judge Mahoney determined that claim preclusion was inapplicable to the circumstances of this case, correctly finding that C&R's instant copyright infringement claim "involves a different protected right (its copyright in the technical drawings), a different alleged wrong ([DSC's] copying of the drawings), and different evidence (the bankruptcy proceedings and parties' actions in 2020)" to prior litigation involving these same parties. *See* July 16, 2021 Order (docket no. 54) at 15. Accordingly, Defendants are not entitled to summary judgment based on claim preclusion.

In order to address C&R's copyright infringement claim, the court begins by reviewing C&R's claim as set forth in its Amended Complaint. In the Amended Complaint, C&R acknowledges that Four Keys is the owner of the Building, but states that, in addition to Four Keys, FSB and Herbrechtsmeyer "have a close relationship with [DSC] and the parties all worked together in developing [the Building]." Amended Complaint ¶ 79. Further, C&R claims that DSC, "at the direction of and coordination with [FSB], . . . Herbrechtsmeyer, and Four Keys, . . . prepared and published technical drawings for [the Building]." *Id*. ¶ 80. C&R asserts that the November 24, 2020 plans and drawings created by WWA for DSC and Four Keys constitutes copyright infringement of C&R's original building plans. *Id*. ¶¶ 81-83. C&R alleges that Four Keys, FSB and Herbrechtsmeyer "acted in concert with [DSC] and [WWA] and should be jointly liable for the infringement." *Id*. ¶ 84.

C&R contends that WWA could not have generated the November 24, 2020 plans based on DSC's measurements of the Building because WWA's generated plans are substantially similar to C&R's copyrighted plans. In support of this contention, C&R relies solely on the affidavit of James Gray, Manager and Chief Executive Officer of C&R, where, after comparing WWA's November 24, 2020 generated plans with C&R's

11

copyrighted plans, Gray notes that the C&R plans show a wall that was not actually built and could not have been measured, but shows up on WWA's plans. *See* Gray Affidavit (docket no. 111-3) at 5. Gray also notes that the design of laundry closets for four apartment units also demonstrates the copyright infringement. *See id*. at 7.

In response, DSC and WWA filed an affidavit from Randy Kibsgaard, former senior project manager for DSC who worked on the Building. *See generally* Kibsgaard's Supplemental Affidavit (docket no. 135). In the affidavit, Kibsgaard states that the WWA generated plans "are not copies of or derived from C&R's Original Building Plans" and notes at least 13 differences between C&R's copyrighted plans and WWA's November 24, 2020 plans. *See* Kibsgaard Supplemental Affidavit at 2, 4-6, ¶¶ 6, 10(a)-(m) & attached Exhibits O-AA (docket nos. 135-7 through 135-19). Further Kibsgaard states that, "[f]ollowing the development of the initial [November 24, 2020] drawings, additional site visits are utilized to verify, correct, and supplement the drawings as was done in this project," resulting in WWA generating the December 29, 2020 plans. *See* Kibsgaard Supplemental Affidavit at 6-7, ¶ 11. Finally, Kibsgaard notes that WWA's generated plans "were not utilized to construct the [B]uilding. The [B]uilding had already been constructed" and the WWA plans were used for communications with subcontractors and suppliers "as a way to identify locations by room number, discuss interior finishes, and to logistically facilitate the project as a footprint or map of the building." *Id*. at 7, ¶ 12.

Based on all of the foregoing, the court makes several observations. First, it is undisputed that Four Keys owned the Building at the time C&R alleges the copyright infringement. It is also undisputed that Four Keys entered into a contract with DSC to complete the Building. In order to complete the project, DSC had WWA generate plans for the Building. Nothing in the summary judgment record supports C&R's contention that FSB or Herbrechtsmeyer had any involvement in WWA's generation of the November 24, 2020 plans.

Second, C&R's copyright infringement claim is in regard to WWA's November 24, 2020 generated plans, which were corrected with the production of new generated plans by WWA on December 29, 2020. The December 29, 2020 plans, which C&R does not claim resulted from copyright infringement, are presumably the plans DSC used to complete the Building.

Third, C&R's primary reliance on one wall in Units 216 and 316 as proof of WWA's copyright infringement, and also passing reference to the wall design for four laundry closets as proof of infringement, appears fairly minimal to meet the substantially similar standard for copyright infringement. This is particularly the case, where here, DSC and WWA have pointed out 13 differences between C&R's copyrighted plans and WWA's November 24, 2020 plans. *See* Kibsgaard Supplemental Affidavit at 2, 4-6, ¶¶ 6, 10(a)-(m) & attached Exhibits O-AA (docket nos. 135-7 through 135-19); *see also Rottlund Co.*, 452 F.3d at 731 (discussing the first step of the substantial similarity analysis, requiring that "[s]imilarity of ideas [be] evaluated extrinsically, focusing on objective similarities in the details of the works").

Fourth, while not specially addressed by either party, the record before the court suggests that the Building was completed pursuant to WWA's December 29, 2020 plans, which C&R does not claim resulted from copyright infringement, and which, the parties agree corrected issues with the November 24, 2020 plans. As such, it appears impossible for C&R to meet the second step of the two-step analysis used for determining substantial similarity, that is the requirement of substantial similarity in expression. *See Rottlund Co.*, 452 F.3d at 731. In other words, even if WWA's November 24, 2020 plans were copied from C&R's original plans, none of the Defendants in this case, or anyone for that matter, built a building based on C&R's original plans or WWA's November 24, 2020 plans. Therefore, there could be no similar expression necessary for copyright infringement. *See id*.

Fourth, and most significantly, even if WWA's November 24, 2020 generated plans were copied from C&R original copyrighted plans, and, even if WWA's November

13

24, 2020 generated plans were used to complete the Building, both of which seem unlikely, the purpose of those plans was to complete the Building, which was unfinished when Four Keys became the owner. Pursuant to 17 U.S.C. § 120(b), the owner of a building may authorize the alteration of building with an architectural works copyright "without the consent of the author or copyright owner of the architectural work." *Id*. Thus, Four Keys' engagement with DSC and WWA to complete the Building does not constitute copyright infringement. In *Javelin Investments, LLC*, a case that is similar to the situation here, homeowners building a new home severed their relationship with the original builder and architect and hired a new architect and builder to complete their home. 2007 WL 781190, at *1-*2. The original architect and builder sued the homeowners, for among other things, copyright infringement. *Id*. In determining that the original architect and builder did not have a copyright infringement claim, the district court addressed the express limitations on an architectural works copyright provided by 17 U.S.C. § 120(b):

> Section 120(b) does not expressly contain any limitation upon the manner or means by which a homeowner may exercise his [or her] right to alter the structure. Presumably, no such limitations were intended by Congress, else they would be expressed in § 120(b). Significantly, the original draft of the AWCPA permitted only "minor" or "necessary" changes by the building owner absent the architect's consent. . . . [However, t]he unrestricted alteration right was inserted at the urging of the American Institute of Architects. One influential architect, Michael Graves, argued persuasively that retention of an architect's "veto" over building alterations would not in practice benefit the architect, because building owners would then demand assignment of all copyright interests up front as a standard condition of any engagement. . . . Given this history, the failure to specify permissible methods of alteration is unremarkable, and supports no inference of an implied restriction. . . .
>
> [Plaintiff's] implied limitation upon § 120(b) alteration rights also defies common sense. [Plaintiff] argues that the [defendants] had three alternatives if they wished to finish their house: (1) getting [plaintiff's] permission to use [plaintiff's] plans; (2) finishing construction without using any plans; or (3) substantially altering the existing structure so that it was

14

not "substantially similar" to [plaintiff's] plans. These supposed alternatives illustrate perfectly the predicament building owners would face in the absence of § 120(b). Option 1 would give the architect a "veto" over subsequent adaptation and even repair of inhabitable buildings, a result not only impractical but also inimical to the best interest of architects in the long run. Option 2 is a recipe for professional malpractice and structural failure. No professional architect or builder would commence a substantial renovation project without drawings or plans reflecting the existing structure. . . . It would serve little purpose for Congress to expressly grant homeowners the right to make whatever changes they wish to their homes, while silently denying them the practical means to exercise that very right. Option 3 merely encourages economic waste, forcing the owner to destroy work product which he has already bought and paid for. These "alternatives" to § 120(b) sharply illustrate the practical wisdom of Congress in bestowing upon building owners a limited statutory license to modify their own buildings. . . .

[Plaintiff's] argument that § 120(b) does not give the [defendants] the right to copy [plaintiff's] plans for the limited purpose of finishing the house is untenable as a matter of law. It is undoubtedly true that a homeowner could not copy the architectural plans in order to build another home on another site. The statute itself plainly precludes that possibility. 17 U.S.C. § 120(b) ("owners of a building which embodies a copyrighted architectural work may . . . make or authorize the making of alterations *to such building* . . ."). But it seems equally clear that § 120(b) places no limits upon the means by which building owners may alter their buildings without fear of infringement. Whether the alteration is accomplished by measuring the existing structure or by copying the original plans for the existing structure is simply immaterial.

2007 WL 781190, at *6-*8 (emphasis in original). The court finds the district court's analysis in *Javelin Investments, LLC* persuasive. Pursuant to ¶ 120(b), C&R's copyright "places no limits upon the means by which building owners may alter their buildings without fear of infringement," which, here, includes hiring contractors to complete the building. *Javelin Investments, LLC*, 2007 WL 781190, at *8. Like in *Javelin Investments, LLC*, Four Keys, DSC and WWA, and to the extent that FSB and Herbrechtsmeyer are somehow involved, none of these parties infringed C&R's copyright by completing the Building.

15

Finally, to the extent that C&R relies on the April 9, 2020 bankruptcy court Order, C&R's reliance is misplaced.[6] The bankruptcy court's Order specifically states that "the Purchaser, or its assignee, may use and occupy [the Building], free and clear of existing and future claims of C&R, whether for copyright infringement or otherwise." April 9, 2020 bankruptcy court Order at 12. Further, the April 9, 2020 bankruptcy court's Order prohibits Defendants from using C&R's original copyrighted plans or drawings for building/copying a second building which is identical or substantially similar to the completed Building owned by Four Keys. C&R has not alleged such an occurrence and any use of the copyrighted drawings or plans by the owner of the Building, Four Keys, which it does not appear Four Keys or any of the other Defendants did use, to complete the Building is not a copyright infringement under 17 U.S.C. § 120(b).

Accordingly, based on all of the foregoing, the court finds that there are no issues of material fact and Defendants are entitled to summary judgment as a matter of law. Indeed, C&R cannot demonstrate the similar expression prong of the two-step analysis for determining substantial similarity necessary for copyright infringement, and Defendants' completion of the Building with or without using C&R's copyrighted plans is not copyright infringement under 17 U.S.C. § 120(b).

## VII. CONCLUSION

In light of the foregoing, the Motion for Summary Judgment (docket no. 104) is **GRANTED**. C&R's Amended Complaint is **DISMISSED**.

**IT IS SO ORDERED**.

---

[6] In its resistance brief, C&R mentions the April 9, 2020 bankruptcy court Order in passing, stating in conclusory fashion that "the [b]ankruptcy [c]ourt's April 9, 2020 Order clearly prohibits the copying or use of C&R's plans." C&R's Brief at 3. C&R offers no further argument with regard to the April 9, 2020 bankruptcy court Order.

**DATED** this 14th day of April, 2022.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA